**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **SARAH CONNER,** individually and on behalf of all others similarly situated**,**<br><br>          Plaintiff,<br>v.<br><br>**ABBOTT LABORATORIES INC.,**<br><br>          Defendant. | Case No.: 3:21-cv-01463-SMY |

**ABBOTT LABORATORIES INC.'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD ................................................................................................. 4

ARGUMENT ............................................................................................................... 5

I.      Plaintiff FAILS TO PLAUSIBLY ALLEGE THAT PRO-ADVANCE'S
         LABEL MISLEADS REASONABLE CONSUMERS. ..................................... 5

II.     PLAINTIFF'S OTHER CLAIMS FAIL AS A MATTER OF LAW. ........................ 13

         A.      Plaintiff's Warranty, Negligence, Fraud, And Unjust Enrichment Claims
                  Fail Because She Cannot Plausibly Allege Deception. ......................................... 13

         B.      Plaintiff's Warranty, Negligence, Fraud, And Unjust Enrichment Claims
                  Fail For Independent Reasons. ................................................................................ 13

                  1.      Plaintiff's Warranty Claims Independently Fail. ................................. 14

                  2.      Plaintiff's Common-Law Claims Suffer Additional Defects. .............. 16

III.    PLAINTIFF'S NON-ILLINOIS CLAIMS AND CLAIMS FOR
         INJUNCTIVE RELIEF SHOULD BE DISMISSED. .................................................. 18

         A.      Plaintiff Lacks Standing To Sue Under The Laws Of States Outside
                  Illinois. .................................................................................................................... 18

         B.      Plaintiff Lacks Standing To Sue For Injunctive Relief. ......................................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Anthony v. Country Life Mfg., LLC*,
    70 F.App'x 379 (7th Cir. 2003) ...........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................4

*Avon Hardware Co. v. Ace Hardware Corp.*,
    998 N.E.2d 1281 (Ill. App. Ct. 2013) .................................................................17

*Lee ex rel. B.L. v. Picture People, Inc.*,
    2012 WL 1415471 (Del. Super. Ct. Mar. 19, 2012) ...........................................15

*Bay Point Condo. Ass'n, Inc. v. RML Corp.*,
    52 Va. Cir. 432 (2000) .......................................................................................18

*BCBSM, Inc. v. Walgreen Co.*,
    512 F. Supp. 3d 837 (N.D. Ill. 2021) .................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .............................................................................11

*Birt v. Wells Fargo Home Mortg., Inc.*,
    75 P.3d 640 (Wyo. 2003).....................................................................................17

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ..................................................................... *passim*

*Brogan v. Mitchell Int'l, Inc.*,
    692 N.E.2d 276 (Ill. 1998)..................................................................................17

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) .............................................................................20

*Castillo v. Unilever United States, Inc.*,
    2022 WL 704809 (N.D. Ill. Mar. 9, 2022)........................................................20

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ..............................................................19

*City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*,
    918 F.2d 438 (4th Cir. 1990) ............................................16

*Clarys v. Ford Motor Co.*,
    592 N.W.2d 573 (N.D. 1999) ............................................16

*Connick v. Suzuki Motor Co., Ltd.*,
    675 N.E.2d 584 (Ill. 1996) ............................................14

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) ............................................4

*Corwin v. Conn. Valley Arms, Inc.*,
    74 F. Supp. 3d 883 (N.D. Ill. 2014) ............................................15

*Cruz v. D.F. Stauffer Biscuit Co., Inc.*,
    2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021) ............................................9

*Darne v. Ford Motor Co.*,
    2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ............................................11

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ............................................5

*De Bouse v. Bayer*,
    922 N.E.2d 309 (Ill. 2009) ............................................11

*DiPetrillo v. Dow Chem. Co.*,
    729 A.2d 677 (R.I. 1999) ............................................14

*Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*,
    679 N.E.2d 1197 (Ill. 1997) ............................................16, 17

*Floyd v. Pepperidge Farm, Inc.*,
    2022 WL 203071 (S.D. Ill. Jan. 24, 2022) ............................................ *passim*

*Forsher v. J.M. Smucker Co.*,
    2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) ............................................12

*Fuchs v. Menard, Inc.*,
    2017 WL 4339821 ............................................6

*Galanis v. Starbucks Corp.*,
    2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) ............................................6, 8

*GFSI, Inc. v. J-Loong Trading, Ltd.*,
    505 F. Supp. 2d 935 (D. Kan. 2007) ............................................14

*Gordon v. Target Corp.*,
Case No. 7:20-cv-9589 (S.D.N.Y. Nov. 15, 2020) .................................................................4

*Gordon v. Target Corporation*,
2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ................................................................ *passim*

*Gorman v. Am. Honda Motor Co., Inc.*,
839 N.W.2d 223 (Mich. Ct. App. 2013) ........................................................................14, 15

*Gubala v. CVS Pharmacy, Inc.*,
2015 WL 3777627 (N.D. Ill. June 16, 2015) ........................................................................9

*Hayes v. General Mills, Inc.*,
2021 WL 3207749 (N.D. Ill. July 29, 2021) ........................................................................13

*Holiday Motor Corp. v. Walters*,
790 S.E.2d 447 (Va. 2016) ........................................................................................15

*Holler v. Cinemark USA, Inc.*,
185 F. Supp. 2d 1242 (D. Kan. 2002) ................................................................................13

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,
532 N.W.2d 541 (Mich. Ct. App. 1995) ..............................................................................16

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
2014 WL 943224 (D. Minn. Mar. 11, 2014) ........................................................................19

*Jackson v. Am. Water Co.*,
2021 WL 135912 (S.D. Ill. Jan. 14, 2021) ............................................................................4

*Jett v. Warrantech Corp.*,
436 F. Supp. 3d 1170 (S.D. Ill. 2020) ..........................................................................19, 20

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) ..............................................................................19

*Kennedy v. Mondelez Glob. LLC*,
2020 WL 4006197 (E.D.N.Y. July 10, 2020) ........................................................................10

*Killeen v. McDonald's Corp.*,
317 F. Supp. 3d 1012 (N.D. Ill. 2018) ............................................................................6, 11

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
844 F. Supp. 2d 519 (D. Del. 2012) ................................................................................16

*Lagen v. Balcor Co.*,
653 N.E.2d 968 (Ill. Ct. App. 1995) ................................................................................17

*Lane v. City of Lee's Summit*,
   2021 WL 5311330 (W.D. Mo. Nov. 15, 2021).................................................................13

*Larry Trover Produce, Inc. v. Nutrien Ag Sols., Inc., Nutrien, Ltd., et al.*,
   2022 WL 594863 (S.D. Ill. Feb. 28, 2022) ...................................................................15

*Leppert v. Champion Petfoods USA Inc.*,
   2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ...................................................................15

*Limestone Farms, Inc. v. Deere & Co.*,
   29 P.3d 457 (Kan. Ct. App. 2001) ................................................................................15

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. &
   Sales Prac. Litig.*,
   2017 WL 2911681 (E.D. Va. July 7, 2017) ..................................................................14

*Maldonado v. Creative Woodworking Concepts, Inc.*,
   796 N.E.2d 662 (Ill. App. Ct. 2003) ............................................................................15

*Miller v. Hypoguard USA, Inc.*,
   2005 WL 3481542 (S.D. Ill. 2005) ..............................................................................14

*Mktg. Design Source, Inc. v. Pranda N. Am., Inc.*,
   799 A.2d 267 (R.I. 2002) ..............................................................................................15

*Morris v. Walmart Inc.*,
   2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) .............................................................10

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020) .....................................................................14, 16

*Palmieri v. Mead Johnson & Co., LLC*,
   Case No. 7:20-cv-09591 (S.D.N.Y. Nov. 15, 2020)......................................................4

*Payton v. Cnty. of Kane*,
   308 F.3d 673 (7th Cir. 2002) ........................................................................................18

*Piescik v. CVS Pharmacy, Inc.*,
   2021 WL 5996977 (S.D. Fla. Dec. 15, 2021) ..............................................................11

*Podpeskar v. Dannon Co., Inc.*,
   2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ................................................................12

*Reid v. Unilever U.S., Inc.*,
   964 F. Supp. 2d 893 (N.D. Ill. 2013) ...........................................................................15

*Rinaldi v. Iomega Corp.*,
   1999 WL 1442014 (Del. Super. Ct. Sept. 3, 1999).......................................................14

*Rinehart v. Morton Bldgs., Inc.*,
  305 P.3d 622 (Kan. 2013) ...................................................16

*Rogers v. Wright*,
  366 P.3d 1264 (Wyo. 2016) ...............................................16

*Rosen v. Tennessee Comm'r of Fin. & Admin.*,
  288 F.3d 918 (6th Cir. 2002) .............................................18

*Rudy v. Family Dollar Stores, Inc.*,
  2022 WL 345081 (N.D. Ill. Feb. 4, 2022) ............................17

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ..................................14

*Scherr v. Marriott Int'l, Inc.*,
  703 F.3d 1069 (7th Cir. 2013) ...........................................19

*Simmons v. Village of Minier, Ill.*,
  2021 WL 5068526 (C.D. Ill. Nov. 1, 2021) .........................12

*Smith v. Abbott Laboratories Inc.*,
  Case No. 1:20-cv-05684 (E.D.N.Y. Nov. 22, 2020) ................4

*Smith v. Barton & Assocs., Inc.*,
  501 P.3d 378 (Kan. Ct. App. 2022) ....................................17

*Spector v. Mondelez Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ..........................7, 8, 10

*State Farm Mut. Auto. Ins. Co. v. Remley*,
  618 S.E.2d 316 (Va. 2005) .................................................17

*Stewart v. Kodiak Cakes, LLC*,
  2021 WL 4950297 (S.D. Cal. Oct. 25, 2021) .......................12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...........................................................20

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021).........................................................19

*Williams v. Walmart Inc.*,
  Case No. 1:20-cv-02768 (E.D.N.Y. June 22, 2020) ...............4

*Wozniak v. Ford Motor Co.*,
  2019 WL 108845 (E.D. Mich. Jan. 4, 2019)..........................18

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  2012 WL 1831789 (S.D. Ill. May 18, 2012) ........................................................... 15

*Yates v. Pitman Mfg., Inc.*,
  514 S.E.2d 605 (Va. 1999) .................................................................................... 14

*Zahora v. Orgain LLC*,
  2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ................................................. *passim*

**Statutes**

ILCS 5/2-607(3)(a) .................................................................................................. 14

810 ILCS 5/2-314 .................................................................................................... 15

21 U.S.C. §321(z) ...................................................................................................... 2

Del. Code Ann. tit. 6, §2-314 .................................................................................. 15

Illinois Consumer Fraud and Deceptive Business Practices Act ............................ 12

Kan. Stat. Ann. §84-2-314 ...................................................................................... 15

Kan. Stat. Ann. §84-2-607(3)(a) ............................................................................. 14

Merchantability, and Magnuson Moss Warranty Act ............................................. 13

Mich. Comp. Laws 440.2607(4) .............................................................................. 14

Mich. Comp. Laws §440.2314 ................................................................................. 15

N.D.C.C. §41-02-31 ................................................................................................. 15

N.D.C.C. §41-02-70(3)(a) ........................................................................................ 14

R.I. Gen. Laws §6A-2-314 ....................................................................................... 15

R.I. Gen. Laws §6A-2-607(3)(a) .............................................................................. 14

U.C.C. §2-313 .......................................................................................................... 14

U.C.C. §2-607 .......................................................................................................... 14

Va. Code Ann. §8.2-607 .......................................................................................... 14

Va. Code Ann. §8.2A-212 ....................................................................................... 15

Wyo. Stat. Ann. §34.1-2-607(c)(i) .......................................................................... 14

**Rules**

Rule 8(a)................................................................................................................................12

Rule 9(b) ........................................................................................................... *passim*

Rule 12(b)(1)............................................................................................................5, 18, 19, 20

Rule 12(b)(6)................................................................................................4, 5, 13, 16

Plaintiff brings this putative class action challenging the product labeling for Abbott's Similac® Pro-Advance infant formula.  At the outset, it is important to underscore what Plaintiff does ***not*** allege: she does not allege that a single statement on the Pro-Advance label is untrue; she does not allege that Pro-Advance is not Abbott's closest formula to breast milk; she does not allege that Pro-Advance fails to contain the ingredients displayed on its front label; and she does not allege that Pro-Advance fails to provide infants with significant benefits, including immune support and assistance with brain and eye development.  Instead, Plaintiff contends that the true statements on Pro-Advance's label leave the false impression that the product is equivalent to breast milk.  *See* Compl. ¶¶2, 8–15.  To get there, Plaintiff ignores prominent language ***affirming*** that "[b]reast milk is recommended" and instead reimagines the Pro-Advance label to make claims that do not appear based on inferences no reasonable consumer would ever make.  But Plaintiff's fundamental error is mistaking a comparative claim about Abbott's ***own*** products for a comparative claim to breast milk more broadly.  Because there is nothing misleading about the Pro-Advance label, and nothing in the Complaint plausibly alleges otherwise, Plaintiff's claims should be dismissed in their entirety without leave to amend.

***First***, "[t]he Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product."  *Floyd v. Pepperidge Farm, Inc.*, 2022 WL 203071, at *4 (S.D. Ill. Jan. 24, 2022) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) and dismissing implied falsity claim "that butter was the sole shortening ingredient" in crackers).  Yet Plaintiff has not identified a single untrue statement on the Pro-Advance label.  Plaintiff tries to swirl together various aspects of the label ("Our Closest Formula to Breast Milk," "Immune Support," "Brain and Eye Development," and various ingredients) to claim the label creates the impression that Pro-Advance "can approach the benefits from breast milk," *see* Compl.

¶¶8–9, but the label itself makes no such representation, and instead says "[b]reast milk is recommended."  Ex. 1.  "A reasonable consumer would not read into the label what is simply not there," and Plaintiff thus cannot plead any claim under a deceptive practices statute (or any other cause of action) that depends on the theory that Pro-Advance's label is misleading.  *See Zahora v. Orgain LLC*, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021); *Floyd*, 2022 WL 203071, at *4-8.

*Second*, Plaintiff's tag-along claims fail for several independent reasons.  Plaintiff's warranty claims fail because she never gave Abbott the necessary pre-suit notice, identifies no warranty on Pro-Advance's label, and fails to plausibly allege that Pro-Advance is not merchantable as infant formula.  Plaintiff's common-law claims (negligent misrepresentation, fraud, and unjust enrichment) must be dismissed too, as they are barred by the economic-loss doctrine, Plaintiff does not plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), and Abbott owes no duty to Plaintiff.  Each of these, on its own, supports dismissal.

*Finally*, Plaintiff lacks standing to pursue her non-Illinois-law claims and to seek injunctive relief in this action.  This threshold jurisdictional issue bars many of her claims as well.

## BACKGROUND

Abbott is a leading manufacturer of infant nutrition products, including infant formula, a well-known nutritional substitute for human milk.  The formula at issue in this case is Similac® Pro-Advance ("Pro-Advance"), an iron-fortified milk-based powder for 0-12 month old infants, which is labeled consistent with the Federal Food, Drug, and Cosmetic Act's definition of infant formula.  *See* 21 U.S.C. §321(z) (defining infant formula "solely as a food for infants by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk").  Through its label, Abbott describes Pro-Advance as "Our Closest Formula to Breast Milk," says Pro-Advance can provide "Immune Support" and "Brain and Eye Development," and mentions

certain ingredients in the product, including "Vitamin E," "Lutein," "DHA," and "2'-FL HMO-Human Milk Oligosaccharide"; the product is also labeled as "non-GMO," Ex. 1; Compl. ¶¶1–2:



Contrary to Plaintiff's description of the Pro-Advance label, Abbott does not expressly or impliedly equate the benefits of Pro-Advance to the benefits of breast milk; nor does it suggest that Pro-Advance can replace the benefits from breast milk, or that there is any equivalence between the two. Directly beneath the contact information for Abbott's "Feeding Expert Hotline," the Pro-Advance label states, "[b]reast milk is recommended," and the product's front label (depicted above) states that its HMO ingredient is "not from human milk":



Ex. 1.[1]  The Complaint also omits the statement—"Ingredients not genetically engineered"—denoted by the asterisk placed next to Abbott's "non-GMO" representation.  *Id.*

On November 20, 2021, without prior notice to Abbott, Plaintiff filed this putative class action—one of several class actions filed by Plaintiff's counsel related to infant formula or toddler drinks.  *See, e.g.*, Compl. [ECF No. 1], *Smith v. Abbott Laboratories Inc.*, Case No. 1:20-cv-05684 (Nov. 22, 2020 E.D.N.Y.), *Williams v. Walmart Inc.*, Case No. 1:20-cv-02768 (June 22, 2020 E.D.N.Y.), *Palmieri v. Mead Johnson & Co., LLC*, Case No. 7:20-cv-09591 (Nov. 15, 2020 S.D.N.Y.), *Gordon v. Target Corp.*, Case No. 7:20-cv-9589 (Nov. 15, 2020 S.D.N.Y.).  Plaintiff brings claims under Illinois's deceptive practices statute and unspecified statutes from other states, as well as claims for fraud, negligent misrepresentation, breach of warranty, and unjust enrichment.

## LEGAL STANDARD

*Rule 12(b)(6).*  A complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and a plaintiff must go beyond "[c]onclusory statements and labels" and "do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law."  *Jackson v. Am. Water Co.*, 2021 WL 135912, at *2 (S.D. Ill. Jan. 14, 2021) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Rule 9(b).*  Certain allegations—including claims sounding in fraud—"must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."  *Chiappetta*, 2022 WL

---

[1] Because Plaintiff includes the front of the Pro-Advance label in her Complaint, Compl. ¶1, the entire product label is part of the pleadings for purposes of the motion to dismiss.  *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the [plaintiff's] claim[s].").

4

602505, at *3.  "In practice, this means that a plaintiff must identify the who, what, when, where, and how of the alleged fraud."  *Id.* (citation omitted).

*Rule 12(b)(1).*  A challenge to a federal court's subject matter jurisdiction is properly raised by way of a 12(b)(1) motion.  *See id.* at *3.  Without jurisdiction, a federal court lacks the power to adjudicate the merits of a case, and it is well-settled that a plaintiff "bears the burden of establishing that the court has jurisdiction over the matter," claims, and forms of relief requested in a case.  *See id.* at *3; *Floyd*, 2022 WL 203071, at *7.

## ARGUMENT

## I.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT PRO-ADVANCE'S LABEL MISLEADS REASONABLE CONSUMERS.

Plaintiff's claims all fail under Rule 12(b)(6) because she has not alleged any misrepresentations by Abbott on the Pro-Advance label.  To plausibly allege a misrepresentation, Plaintiff must come forward with facts alleging that the Pro-Advance label is "likely to deceive *reasonable* consumers."  *Zahora*, 2021 WL 5140504, at *3 (emphasis added); *see Floyd*, 2022 WL 203071, at *3.  "The Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product."  *Floyd*, 2022 WL 203071, at *4 (citing *Bober*, 246 F.3d at 938 and dismissing implied falsity challenge to "Golden Butter" name of crackers).  Context is crucial in determining whether a reasonable consumer, acting reasonably under the circumstances, is likely to be misled by a product label, and courts look to all "of the information made available to the plaintiff in deciding whether a statement is deceptive."  *Id.* at *3 (quotations omitted); *see Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("[T]he allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff.").

For this reason, Illinois district courts routinely dismiss misleading labeling claims where "[c]onsumers in the [p]laintiffs' position have direct access to all of the information they need" to dispel any potential deception. *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *2, 5; *see also*, *Bober*, 246 F.3d at 938–39 (affirming dismissal where "packaging information" and "frequently asked question web page" cured any deception); *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) ("[A] straightforward, price-to-price comparison based on information available at the point of purchase would unequivocally dispel any misleading inference that could be drawn from the name 'Extra Value Meal.'"); *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) ("A reasonable consumer would notice that the menus separately list the contents of the drinks and the size of the containers the drinks are served in.").

Applying these bedrock principles warrants dismissal here. ***First***, not a single statement on the Pro-Advance label is false or misleading. Abbott markets Pro-Advance as "Our Closest Formula to Breast Milk"—and Plaintiff does not (and cannot) allege this statement is untrue. Far from suggesting an equivalence to breast milk, Abbott communicates only that Pro-Advance is Abbott's (i.e., "our") closest formula to breast milk, as compared to other infant formulas sold by Abbott. Plaintiff does not allege a single fact suggesting Pro-Advance is ***not*** Abbott's closest formula to breast milk, and her Complaint thus mischaracterizes the Pro-Advance label to make a comparative claim between the benefits of Pro-Advance to the benefits of breast milk, when it actually just compares ***Abbott's*** own products. Nor does Plaintiff allege that Pro-Advance does not contain the ingredients (lutein, vitamin E, DHA, and HMO) described on the product's front label. Among other things, Pro-Advance's Nutrition Facts Panel confirms the product contains vitamin E, "C. Cohnii Oil," which is "a source of DHA," and "2' Fucosyllactose." Ex. 1. In other words, there is nothing untrue or misleading about Abbott's "Our Closest Formula to Breast Milk"

statement or the ingredients featured on the front of the Pro-Advance label, warranting dismissal of Plaintiff's claims. *See, e.g.*, *Floyd*, 2022 WL 203071, at *4 ("There are no untruths on the packaging and there is no deception. The name and the ingredient list coalesced. There was no ambiguity that the crackers contained butter."); *Chiappetta*, 2022 WL 602505, at *5 ("The front of the Product packaging does not state or suggest anything about the amount of strawberries in the Product's filling or guarantee that the filling contains only strawberries, and Chiappetta concedes that the filling contains some strawberries.").

Abbott's references to "Immune Support" and "Brain and Eye Development" on the Pro-Advance label likewise do not inject any confusion. Those statements—like the ones above—are true: Pro-Advance ***does*** support infants' immune systems and brain and eye development, and Plaintiff does not allege otherwise. That fact is fatal to Plaintiff's claims, as courts have repeatedly recognized. *See, e.g.*, *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 665 (N.D. Ill. 2016) ("Plaintiff has pleaded *no* facts, such as personal experience or third-party studies, showing that the [p]roducts do *not* provide 'nutritious steady energy' as promised," and "dismissal of [the] complaint" is "requir[ed]."); *Gordon*, 2022 WL 836773, at *11 ("This claim fails for the same reason that Plaintiff's other claims fail: the [p]roduct's label makes no representation as to its nutritiousness as compared to whole cow's milk … .").

*Spector v. Mondelez International, Inc.*, 178 F. Supp. 3d 657 (N.D. Ill. 2016) is instructive. There, the plaintiff alleged the packaging for belVita breakfast products was misleading when containing "the phrase 'Nutritious Steady Energy All Morning[,]' included as part of a clock graphic with" "a swooping clockwise arrow representing the duration of a four-hour period of time." *Id.* at 662–63. The plaintiff claimed that this labeling scheme "portray[ed] the [p]roducts as offering an entire wholesome breakfast providing at least four hours all morning of nutritious

7

steady energy in a single package," when in fact the products "provide[d] four hours of nutritious steady energy only if they are combined with a serving of low-fat milk." *Id.* (quotations omitted). Because the plaintiff "pleaded *no facts* . . . showing that the [p]roducts do *not* provide 'nutritious steady energy' as promised," the case was dismissed. *Id.* at 665. That reasoning applies with equal force here, as Plaintiff offers no facts suggesting Pro-Advance does not offer what is "promised" in terms of "Immune Support" and "Brain and Eye Development." *See id.*; *Floyd*, 2022 WL 203071, at *4; *Chiappetta*, 2022 WL 602505, at *5; *Galanis*, 2016 WL 6037962, at *3.

**Second**, Plaintiff cannot save her claims by saying that the Pro-Advance label as a whole implies Pro-Advance confers equivalent benefits to those conferred by breast milk. Compl. ¶9. As discussed above, Plaintiff does not claim that Pro-Advance does not provide the listed benefits, and nothing on the label equates those benefits with the benefits of using breast milk. Nor does it suggest that Pro-Advance can replace the benefits of breast milk or that there is an equivalence between the two. In fact, and directly contrary to Plaintiff's twisting of the label, Abbott expressly discloses that "[b]reast milk is recommended" under the contact information provided for its Feeding Expert hotline, and acknowledges that the HMO used in Pro-Advance is "not from human milk" and that the product is a "milk-based powder." *See* Ex. 1. In addition—and to state the obvious—consumers like Plaintiff who are in the market for infant formula **know** they are purchasing formula and not breast milk.

Plaintiff cannot erase this language and rewrite the Pro-Advance label to make comparisons that do not appear on the label itself. "A reasonable consumer would not read into the label what is simply not there." *Zahora*, 2021 WL 5140504, at *4. That is why courts regularly dismiss claims, like Plaintiff's here, that depend on "unreasonable or fanciful interpretations of labels" based on language that does not appear there. *See id.* at *3–4 ("[A] reasonable consumer's

8

reading of the label would only lead her to expect a vanilla bean *flavor*," not a "guarantee that 'most of the flavor would come from vanilla beans and none would come from artificial flavors'"); *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *6 (N.D. Ill. June 16, 2015) ("The Product does not list the whey protein ingredient while 'excluding others'; it is clearly also labeled as being vanilla-flavored and containing additional natural and artificial ingredients."); *Cruz v. D.F. Stauffer Biscuit Co., Inc.*, 2021 WL 5119395, at *5–6 (S.D.N.Y. Nov. 4, 2021) ("[T]he image of lemons on the packaging" does not "creat[e] a dispositive impression that the Product contains predominantly real lemons" because "nothing on the Product label states or implies that the cookies' flavor is derived entirely or predominantly from real lemons … .").

*Gordon v. Target Corporation*, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022)—decided just two weeks ago—is a case in point. There, the plaintiff alleged that a "transition formula" drink was deceptively marketed because it: (i) "create[d] the 'false impression' that" the drink would "'give toddlers the nutrition that they wouldn't get from other sources'" and thus was "the necessary 'next step' in toddler development"; and (ii) was "less nutritious than whole cow's milk." *Id.* at *10–11. The court disagreed and dismissed the complaint in its entirety, explaining: "[n]owhere on the label does [d]efendant claim that the [p]roduct gives toddlers nutrition that they would not get from other sources, that the [p]roduct is necessary for development, that the [p]roduct is recommended by pediatric health experts, or that the [p]roduct is to toddlers what the [i]nfant [f]ormula is to infants." *Id.* at *10. The drink label likewise "ma[de] no representation as to its nutritiousness as compared to whole cow's milk." *Id.* at *11. These same considerations apply here, and any claim based on the theory that Abbott markets Pro-Advance as equivalent to breast milk should be dismissed with prejudice.

The fact that breast milk *also* provides benefits like immune support and assistance with brain and eye development makes no difference. *See, e.g.*, Compl. ¶¶20, 40. That a product contains more or less of an ingredient than an alternative, or confers more or less of a benefit, "misses the point—it does not establish deception." *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *10 (E.D.N.Y. July 10, 2020). *Morris v. Walmart Inc.*, 2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) shows why. There, the plaintiff alleged that Walmart misleadingly marketed pediatric nutrition drinks as "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow," when the drinks contained "a large quantity of empty calories and sugar." *Id.* at *5. The district court dismissed the challenges to those statements, explaining: "[t]he relevant question is not whether the shakes are the healthiest delivery mechanism for the vitamins and minerals they contain," but whether the drinks provided *any* nutritional value to support Walmart's label claims. *Id.* Because the plaintiff "d[id] not claim that the shakes [were] completely devoid of nutritional value" or "explain in any detail how the shakes fail to provide balanced nutrition or nutrition to help kids grow," her claims failed as a matter of law. *Id.* Plaintiff's claims here fail for identical reasons: she never plausibly alleges how Pro-Advance fails to provide infants with immune support or assist with their brain and eye development.[2]

**Third**, Plaintiff's final theory—asserted only in passing in paragraphs 16 and 17 of the Complaint—is that the Pro-Advance label misleadingly brands the product as "non-GMO" when the product "is made from dairy ingredients from cows which have consumed genetically modified feed." *See* Compl. ¶16–17. This theory also fails. Plaintiff never even alleges that she purchased

---

[2] Plaintiff claims, without support, that no scientific evidence supports the notion that "the structure/function benefit[s]" of Pro-Advance are equivalent to benefits of breastmilk. *See* Compl. ¶11. But Plaintiff cannot mount a substantiation claim based on a claim that Abbott does not make. *See Bober*, 246 F.3d at 939 n.2; *Spector*, 178 F. Supp. 3d at 666.

Pro-Advance because she saw Abbott's "non-GMO" statement.  *See id.* ¶40 (alleging Plaintiff purchased Pro-Advance "because she expected it was similar to breast [ ] milk in its effect on immunity and brain and eye development").  That failure is enough to preclude her from seeking relief based on this statement.  *See, e.g.*, *Gordon*, 2022 WL 836773, at *13 (dismissing challenge to non-GMO claim where plaintiff "failed to allege that she relied on any representations made on the Product's label in purchasing the Product"); *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *9 (N.D. Ill. Dec. 18, 2015); *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009).

Plaintiff's "non-GMO" theory fails for more fundamental reasons too.  Although Plaintiff claims Abbott's "non-GMO" statement is misleading because Pro-Advance is made from cows "which have consumed genetically modified feed," Compl. ¶ 16, the label makes no representation at all about the diet of animals that produce ingredients used in the product.  In fact, the label explicitly states—in what Plaintiff calls a "qualification," *id.* ¶17—that "non-GMO" refers only to Pro-Advance's **direct** ingredients, noting: "non-GMO" means that Pro-Advance's "[i]ngredients [are] not genetically engineered."  *See* Ex. 1.

Plaintiff cannot ignore this statement, which is clearly denoted with an asterisk on Pro-Advance's front label.  Allegedly deceptive statements "must be looked upon in light of the totality of the information made available to the plaintiff."  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).  Here, that means the whole Pro-Advance label, including language defining "non-GMO" in a way different than how Plaintiff invites this Court to read it.  Indeed, courts consistently reject attempts to ignore clarifying language when addressing deceptive packaging claims.  *See, e.g., Piescik v. CVS Pharmacy, Inc.*, 2021 WL 5996977, at *5 (S.D. Fla. Dec. 15, 2021) (hand sanitizer label not misleading where "the back of the hand sanitizer clearly discloses [the relevant information] to the consumer"); *Killeen v. McDonald's Corp.*, 317 F. Supp.

3d 1012, 1013 (N.D. Ill. 2018) ("[A]nyone familiar with fast-food restaurants such as McDonald's surely knows that prices are typically displayed on menus located near the registers.").

What is more, courts have rejected allegations that a product contained GMOs or was unnatural simply because, at some point in the food chain, the animal source of the product ingested genetically modified food. *See, e.g.*, *Stewart v. Kodiak Cakes, LLC*, 2021 WL 4950297, at *5 (S.D. Cal. Oct. 25, 2021) ("[I]t is not plausible for a reasonable consumer to believe that 'non-GMO' means ingredients not derived from animals that eat feed containing GMOs."); *Podpeskar v. Dannon Co., Inc.*, 2017 WL 6001845, at *1, 5 (S.D.N.Y. Dec. 3, 2017) (dismissing as speculative claims that yogurt labeled as "natural" was deceptive because "the cows that produced the milk that produced the yogurt may, at some point, have eaten feed made from corn that was genetically modified"); *Forsher v. J.M. Smucker Co.*, 2020 WL 1531160, at *7 (N.D. Ohio Mar. 31, 2020) (similar).  Plaintiff's allegations are just as speculative as the allegations in those cases, so the result should be the same.

Because Plaintiff has not plausibly alleged the Pro-Advance label is misleading, her "Illinois Consumer Fraud and Deceptive Business Practices Act" claim fails as a matter of law and must be dismissed with prejudice.

***Finally***, Plaintiff's non-Illinois deceptive practices claims also fail for the independent reason that Plaintiff does not bother to identify the statutes on which she relies.  This does not satisfy Rule 8(a), much less the heightened particularity requirements imposed by Rule 9(b).  If Plaintiff believes she has a cause of action under state law, she "must provide the [d]efendant[] and the Court with some indication of what that claim is and the grounds upon which it rests."  *See* *Simmons v. Village of Minier, Ill.*, 2021 WL 5068526, at *4 (C.D. Ill. Nov. 1, 2021).  Plaintiff has not attempted to meet that burden, and neither Abbott nor the Court should be expected to "scour

the [state] code[s] to locate applicable statutes" that she "may or may not be invoking." *Lane v. City of Lee's Summit*, 2021 WL 5311330, at *2 (W.D. Mo. Nov. 15, 2021); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002).

## II.   PLAINTIFF'S OTHER CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiff's Warranty, Negligence, Fraud, And Unjust Enrichment Claims Fail Because She Cannot Plausibly Allege Deception.

Plaintiff's tag-along causes of action (warranty, negligence, fraud, and unjust enrichment)—all of which turn on the same basic premise that Abbott deceived consumers about the characteristics of Pro-Advance, *see* Compl. ¶¶69, 77, 82, 85—fail under Rule 12(b)(6) for the same reason as her deceptive practices claims: there is nothing false or misleading about the Pro-Advance label. Courts frequently dismiss copycat warranty, negligence, fraud, and unjust enrichment causes of action, like those brought by Plaintiff here, that depend on untenable allegations of deception. *See, e.g.*, *Zahora*, 2021 WL 5140504, at *5 (dismissing "state law claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment" on same grounds as ICFA claim); *Hayes v. General Mills, Inc.*, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021); *Gordon*, 2022 WL 836773, at *15. This Court should too: nothing distinguishes Plaintiff's remaining claims from her deceptive practices claims, and her counts for "Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warranty Act," "Negligent Misrepresentation," "Fraud," and "Unjust Enrichment" should be dismissed with prejudice.

### B.   Plaintiff's Warranty, Negligence, Fraud, And Unjust Enrichment Claims Fail For Independent Reasons.

Separate and apart from her failure to plead anything false or misleading about the Pro-Advance label, Plaintiff's warranty, negligence, fraud, and unjust enrichment claims fail under Rule 12(b)(6) for independent reasons, warranting dismissal of them all with prejudice.

### 1.    Plaintiff's Warranty Claims Independently Fail.

Plaintiff's warranty claims fail as a matter of law for several reasons.

**First**, Plaintiff failed to provide pre-suit notice of her warranty claims, which is a requirement under the law of every state mentioned in the Complaint.[3]  *See* U.C.C. §2-607; *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016); *Miller v. Hypoguard USA, Inc.*, 2005 WL 3481542, *2 (S.D. Ill. 2005).  Although Plaintiff alleges Abbott received notice of the warranty claim through unidentified complaints from unidentified regulators, competitors, and consumers, *see* Compl. ¶74, courts have rejected such allegations, recognizing that the question is "whether [a defendant] was aware that these particular Plaintiffs considered [the defendant] to be in breach."  *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Prac. Litig.*, 2017 WL 2911681, at *14 (E.D. Va. July 7, 2017); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715 (N.D. Ill. 2020); *Gordon*, 2022 WL 836773, at *14.

**Second**, Plaintiff's express warranty claims fail because she identifies no affirmation or promise on the Pro-Advance label.  "[T]o state an express warranty claim, a plaintiff must allege that a product failed to conform with an affirmative statement of fact or promise or an express description of the goods."  *See Anthony v. Country Life Mfg., LLC*, 70 F.App'x 379, 383 (7th Cir. 2003) (applying Illinois law); U.C.C. §2-313.  Plaintiff does not identify a single specific statement warranting that Pro-Advance is "similar to breast [] milk in its effect on immunity and brain and

---

[3] *See* ILCS 5/2-607(3)(a); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589 (Ill. 1996); N.D.C.C. §41-02-70(3)(a); Mich. Comp. Laws 440.2607(4); *Gorman v. Am. Honda Motor Co., Inc.*, 839 N.W.2d 223, 232 (Mich. Ct. App. 2013); Va. Code Ann. §8.2-607; *Yates v. Pitman Mfg., Inc.*, 514 S.E.2d 605, 607 (Va. 1999); *Rinaldi v. Iomega Corp.*, 1999 WL 1442014, at *1 (Del. Super. Ct. Sept. 3, 1999); R.I. Gen. Laws §6A-2-607(3)(a); *DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677, 682 (R.I. 1999); Wyo. Stat. Ann. §34.1-2-607(c)(i); Kan. Stat. Ann. §84-2-607(3)(a); *GFSI, Inc. v. J-Loong Trading, Ltd.*, 505 F. Supp. 2d 935, 939 (D. Kan. 2007).

eye development," Compl. ¶69, and although she "refers to an 'express warranty'" in a conclusory fashion, "Plaintiff has not detailed any particular affirmation or promise that formed part of the basis of the bargain with [Abbott]." *See Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 892 (N.D. Ill. 2014). Her express warranty claims thus should be dismissed. *See id.*; *Leppert v. Champion Petfoods USA Inc.*, 2019 WL 216616, at *7–8 (N.D. Ill. Jan. 16, 2019); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2012 WL 1831789, at *3 (S.D. Ill. May 18, 2012). Short of complete dismissal, Plaintiff's Illinois express warranty claim should be dismissed because she does not plead privity with Abbott, and "[u]nder Illinois law, a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss." *Larry Trover Produce, Inc. v. Nutrien Ag Sols., Inc., Nutrien, Ltd., et al.*, 2022 WL 594863, at *4 (S.D. Ill. Feb. 28, 2022).

*Third*, Plaintiff does not adequately allege a claim for breach of implied warranty because she fails to allege that Pro-Advance is not merchantable. For a product to be merchantable, it must be "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314.[4] Plaintiff does not plead that Pro-Advance is unfit for feeding infants—which, of course, is its ordinary purpose—and so her claim must be dismissed. Plaintiff's implied warranty claims under Illinois and Kansas law likewise fail for the independent reason that she does not allege privity with Abbott, which is a prerequisite to recover economic damages for breach of implied warranty. *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 910-11 (N.D. Ill. 2013); *Limestone*, 29 P.3d at 461.

---

[4] *See also Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003); N.D. Cent. Code Ann. §41-02-31; Del. Code Ann. tit. 6, §2-314; *Lee ex rel. B.L. v. Picture People, Inc.*, 2012 WL 1415471, at *5 (Del. Super. Ct. Mar. 19, 2012); Va. Code Ann. §8.2A-212; *Holiday Motor Corp. v. Walters*, 790 S.E.2d 447, 455 (Va. 2016); Kan. Stat. Ann. §84-2-314; *Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (Kan. Ct. App. 2001); Mich. Comp. Laws §440.2314; *Gorman*, 839 N.W.2d at 228; 6A R.I. Gen. Laws Ann. §6A-2-314; *Mktg. Design Source, Inc. v. Pranda N. Am., Inc.*, 799 A.2d 267, 272 (R.I. 2002).

***Finally***, Plaintiff's claim under the MMWA cannot stand.  A claim under the MMWA "is contingent on Plaintiff having a viable state law warranty claim." *O'Connor*, 477 F. Supp. 3d at 717.  Because her state-law warranty claims fail, Plaintiff cannot pursue her MMWA claim either.

### 2.       Plaintiff's Common-Law Claims Suffer Additional Defects.

Certain of Plaintiff's common-law claims for "Negligent Misrepresentation," "Fraud," and "Unjust Enrichment" also must be dismissed under Rule 12(b)(6) for various legal defects:

***First***, Plaintiff's common-law claims under North Dakota, Delaware, Michigan, Kansas, and Wyoming law are barred by the economic loss doctrine.  Under this doctrine, purely economic losses are generally not recoverable in tort.  *See Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1199 (Ill. 1997).  Plaintiff's North Dakota claims fail because that state broadly applies the doctrine to bar all tort claims arising out of consumer purchases.  *See Clarys v. Ford Motor Co.*, 592 N.W.2d 573, 579 (N.D. 1999). Although Delaware and Michigan allow fraud-in-the-inducement claims for economic loss, *see Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995), Plaintiff does not bring such a claim here.  Similarly, although Kansas and Wyoming allow negligent misrepresentation claims for economic loss where the defendant had a heightened legal duty, *see Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 632 (Kan. 2013); *Rogers v. Wright*, 366 P.3d 1264, 1276 (Wyo. 2016), Plaintiff has not alleged Abbott owed her any such duty.

***Second***, Plaintiff's Virginia and Illinois common law claims fail because she does not sufficiently allege knowledge or intent.  Virginia and Illinois apply the economic loss doctrine to bar, among other things, negligent misrepresentation claims, but allow intentional fraud claims for economic loss.  *See City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th

Cir. 1990); *Fireman's Fund*, 679 N.E.2d at 1199–1202.  Thus, Plaintiff's fraud claims are her only potentially viable common-law causes of action under Virginia and Illinois law.

      To state a claim for fraud under either state law, however, a plaintiff must allege that the defendant made a false statement of material fact, knew it was false, and intended to induce detrimental reliance.  *See State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005); *Lagen v. Balcor Co.*, 653 N.E.2d 968 (Ill. Ct. App. 1995).  Plaintiff does not allege any facts plausibly establishing these elements.  All she alleges is that Abbott's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."  Compl. ¶84.  That conclusory allegation is not enough to satisfy the heightened requirements of Rule 9(b)—which is why courts have uniformly dismissed fraud claims premised on the exact same type of allegations.  *See, e.g.*, *Chiappetta*, 2022 WL 602505, at *8; *Rudy v. Family Dollar Stores, Inc.*, 2022 WL 345081, at *7 (N.D. Ill. Feb. 4, 2022).

      ***Third***, Plaintiff's negligent misrepresentation claims fail because Plaintiff does not sufficiently allege that Abbott was negligent or that Abbott owed her a duty.  *See Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1288 (Ill. App. Ct. 2013).  The Complaint contains zero allegations that Abbott acted negligently in any way, which is enough in and of itself to defeat these claims.  Equally dispositive is Plaintiff's failure to plead a duty.  Although Illinois, Kansas, and Wyoming recognize a duty to communicate accurate information in limited circumstances— namely, where necessary "to avoid negligently conveying false information that results in physical injury to a person or harm to property," or "to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions," *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998); *Smith v. Barton & Assocs., Inc.*, 501 P.3d 378 (Kan. Ct. App. 2022); *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d

640, 656 (Wyo. 2003)—neither circumstance applies here.  Plaintiff does not allege any physical injury could result from Abbott's statements.  Nor does she claim that the label statements were supplied to guide her in a business transaction.  *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 855 (N.D. Ill. 2021) ("There is no plausible allegation that Walgreens is in the business of supplying information, and not goods").  Her negligent misrepresentation claims thus fail.[5]

**Fourth**, Plaintiff's unjust enrichment claims fail.  Unjust enrichment claims cannot stand alone and must be accompanied by a viable common-law or statutory claim.  *Bober*, 246 F.3d at 943.  Because Plaintiff's other claims all fail, her unjust enrichment claim must as well.

## III.   PLAINTIFF'S NON-ILLINOIS CLAIMS AND CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.

Finally, Plaintiff's non-Illinois claims and request for injunctive relief should be dismissed under Rule 12(b)(1) because Plaintiff lacks standing to pursue those claims or forms of relief.

### A.   Plaintiff Lacks Standing To Sue Under The Laws Of States Outside Illinois.

The sole named Plaintiff in this case (Sarah Conner) is an Illinois resident and cannot invoke claims based on the presence of absent class members in states outside of Illinois.  It is black-letter law that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members."  *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).  "[C]lass representatives without personal standing" for every claim asserted "cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer."  *Rosen v. Tennessee Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002).  That is why courts often dismiss claims brought under the laws of states where the named plaintiff does not live and was not injured.  *See Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019);

---

[5] Plaintiff's claim for negligent misrepresentation under Virginia law fails because Virginia does not recognize such a claim.  *Bay Point Condo. Ass'n, Inc. v. RML Corp.*, 52 Va. Cir. 432 (2000).

*Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908–11 (N.D. Cal. 2019); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010).  Plaintiff—an Illinois resident purportedly harmed by purchasing Pro-Advance in Illinois—does not and cannot claim that she personally suffered an injury under the laws of a state other than Illinois, and the Complaint does not identify any named plaintiff from states outside Illinois.  *See* Compl. ¶¶34, 39.

This Court's decision in *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170 (S.D. Ill. 2020) is not to the contrary.  The plaintiff in *Jett* had viable claims under Illinois law, which allowed the Court to defer consideration of plaintiff's ability to represent a multi-state class until the class certification phase.  *Id.* at 1176–77.  Here, by contrast, Plaintiff lacks a viable claim under Illinois law, making it appropriate for the Court to confront her standing to raise out-of-state claims at this stage.  Plaintiff has no standing to assert claims under the laws of states outside Illinois, and the Court should dismiss them without leave to amend under Rule 12(b)(1).[6]

### B.    Plaintiff Lacks Standing To Sue For Injunctive Relief.

Plaintiff's request for "class-wide injunctive relief" suffers another Article III defect. Compl. ¶56; *see also id.* at 10.  "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021).  To sue for injunctive relief in particular, a plaintiff must plausibly allege a "real and immediate threat" of future injury, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir.

---

[6] Plaintiff does not number her counts, but for clarity, she lacks standing to sue for any "Violation of State Consumer Fraud Acts," "Breach[] of Express Warranty," violation of an "Implied Warranty of Merchantability," "Negligent Misrepresentation," "Fraud," or "Unjust Enrichment" under the laws of North Dakota, Rhode Island, Michigan, Virginia, Kansas, Wyoming, and Delaware (or any other state that is not Illinois).

2013), *i.e.*, a "threatened injury [that] is certainly impending" or for which "there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks omitted).  When a plaintiff becomes aware of alleged deception associated with a product, any threatened injury evaporates, and a plaintiff "is not likely to be harmed by the practices in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014); *see also Jett*, 436 F. Supp. 3d at 1177; *Floyd*, 2022 WL 203071, at *7; *Zahora*, 2021 WL 5140504, at *6 ("Now that Zahora is aware of Orgain's conduct, it is unlikely that she will purchase the Product again during the pendency of this case"); *Castillo v. Unilever United States, Inc.*, 2022 WL 704809, at *4 (N.D. Ill. Mar. 9, 2022) (similar).

Plaintiff cannot maintain her request for injunctive relief by generally claiming that "the [challenged] practices continue" (which Abbott takes to mean that it is still selling Pro-Advance with the challenged label) and that she "may have to purchase infant formula" at some undefined point in time.  Compl.  ¶¶48, 56.  Plaintiff fails to say with any certainty or specificity *when* she "may" buy "infant formula," whether she has plans to do so, or even whether the "infant formula" she "may" buy at some point in the future is likely to be Pro-Advance.  Speculation of this sort does not suffice, and her injunctive relief claims should be dismissed under Rule 12(b)(1).

## CONCLUSION

For the reasons above, Abbott respectfully requests that the Court grant its Motion and dismiss Plaintiff's Complaint in its entirety, without leave to amend.

Dated:  April 4, 2022                                    Respectfully submitted,

                                                         */s/ W. Jason Rankin*
                                                         W. Jason Rankin, #6237927
                                                         HEPLERBROOM LLC
                                                         130 N. Main Street
                                                         P.O. Box 510
                                                         Edwardsville, IL 62025

wjr@heplerbroom.com
Telephone: +1 618 656 0184
Facsimile: +1 618 656 1364

Diana M. Watral, P.C. (pro hac vice pending)
diana.watral@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200

T.J. McCarrick (admitted pro hac vice)
tj.mccarrick@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200

***Attorneys for Abbott Laboratories Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ W. Jason Rankin*