IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SARAH CONNOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ABBOTT LABORATORIES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 21-cv-1463-SMY<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In this putative class action, Plaintiff Sarah Connor alleges that Defendant Abbott Laboratories, Inc. misrepresented to consumers that its product "Similac Pro-Advance infant formula" ("the Product") is comparable to breast milk. In the Complaint (Doc. 1), Connor asserts violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; breaches of express warranty, implied warranty, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; negligent misrepresentation; fraud; and unjust enrichment. She seeks injunctive relief as well.

Now pending before the Court is Abbott's Motion to Dismiss for Failure to State a Claim without Leave to Amend Plaintiff's non-Illinois claims and Claims for Injunctive Relief (Doc. 10), which Connor opposes (Docs. 15, 17). For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

**Background**

Plaintiff makes the following allegations in the Complaint (Doc. 1): Defendant Abbott Laboratories, Inc. manufactures, labels, markets, and sells infant formula under the Similac brand identified as the Product (Doc. 1, ¶ 1). The front and back of the packaging in question is shown below:





The representations that the Product contains lutein, vitamin E, DHA, and HMO – Human Milk Oligosaccharide, along with the claim, "Our Closest Formula to Breast Milk," implies that the inclusion of these can approach the benefits from breast milk (Doc. 1, ¶ 8). Despite the disclaimer about "Breast milk is recommended", the Product's label is misleading because, "The Product's comparisons to breast milk expressly and impliedly claim that it can confer the structure/function benefits of breast milk" (Doc. 1, ¶ 12). The marketing of the Product is misleading because "(1) purchasers are dissuaded from breastfeeding, even though it is the option for infant nutrition recommended by pediatricians and global health bodies, and (2) purchasers will wrongly believe that the Product is almost equivalent to breast milk, when this is not true" (Doc. 1, ¶ 15).

Plaintiff Sarah Connor purchased the Product on one or more occasions between May and July 2021 (Doc. 1, ¶ 39). She expected that it was similar to breastmilk in its effect on immunity and brain and eye development (Doc. 1, ¶ 40). She would not have purchased the Product absent Abbott's false and misleading statements and omissions, or would have paid less for it (Doc. 1, ¶ 43). She intends to, seeks to, and will purchase the Product again when she can do so with the

assurance that the Product's representations are consistent with its abilities and/or composition (Doc. 1, ¶ 46).

Connor requests compensatory and injunctive relief and seeks to represent an Illinois class including: All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged (Doc. 1, ¶ 49). Connor further seeks certification of a consumer fraud multi-state class of: All persons in the States of North Dakota, Rhode Island, Michigan, Virginia, Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitation for each cause of action alleged (Doc. 1, ¶ 49).

## Discussion

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The Court draws all reasonable inferences and facts in favor of the nonmovant. *See Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014). To satisfy Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)) and must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (citation omitted).

Rule 9(b) requires a party pleading fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615

(7th Cir. 2011). When an Illinois Consumer Fraud Act claim "rests on allegations of deceptive conduct," the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 646 (7th Cir. 2019) (citation and internal quotation marks omitted).

Abbott argues that Connor's claims must be dismissed on numerous grounds:

(1) she fails to state a claim under the Illinois Consumer Fraud and Deceptive Practices Act because has not plausibly alleged that the label misleads reasonable consumers; (2) her warranty claims fail because she cannot plausibly allege deception; (3) her warranty claims independently fail; (4) her common-law claims suffer additional defects; (5) she lacks standing to sue under the laws of states outside Illinois; and (6) she lacks standing to seek injunctive relief.

### *Illinois Consumer Fraud and Deceptive Practices Act ("ICFA")*

The ICFA safeguards "consumers, borrowers, and businesspersons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal citation and quotation marks omitted). "In order to state a claim under the ICFA, a plaintiff must show: (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law. *See Bober v. Glaxo Welcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001).

Connor alleges a deceptive practice; that the Product's labeling suggests to a reasonable consumer that it can confer the structure/function benefits of breast milk. To state a colorable claim, a plaintiff must plausibly allege that the packaging is likely to deceive reasonable consumers. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020). This

standard "requires a probability that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). A statement is deceptive if "it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Id.* "What matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477.

      Abbott contends that Connor is unable to demonstrate the statements about breast milk are likely to mislead a reasonable consumer because "not a single statement on [the Product] label is false or misleading" (Doc. 11, p. 15). It further contends that Connor's claim is implausible because there is "nothing on the label [equating] those benefits with the benefits of using breast milk" and consumers like Connor know they are shopping for formula and not breast milk (Doc. 11, p. 17).

      The Court finds that a significant portion of the general consuming public could reasonably be misled by the Product's labeling, particularly the reference to Human Milk Oligosaccharide and the phrase, "Our Closest Formula to Breast Milk" (both displayed in larger letters on the front label). Reasonable consumers could also be left with the impression that the Product is almost equivalent to the benefits of breast milk. Abbot's disclaimer does not, as a matter of law, mitigate the potential misleading effects of the labeling –Abbott merely notes, in smaller font on the back of the label, that, "Breast milk is recommended." *Bell*, 982 F.3d at 477 ("reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label").

Moreover, comparisons may be deceptive under the ICFA where two products are too different in composition and effects. See, *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (holding that packaging that implied a comparison between coffee pods and Keurig K-Cups could be misleading as the former was mostly instant coffee). If substantiated, several of the allegations in the Complaint could plausibly result in a finding that the Product's labeling was deceptive in its comparison, including that, "Breast milk contains myriad molecular and live tissue components such as secretory IgA, enzymes, lysozymes, hormones, macrophages and growth factors that are unique for each mother, which cannot be manufactured, and are not found in breast milk substitutes" (Doc. 1, ¶ 5). At this juncture, the Court also cannot examine the elements of the Product and breast milk and determine whether it is deceptive to reference, for instance, "HMO – Human Milk Oligosaccharide," which (despite a small disclaimer) may suggest some underlying breast milk constituent. *Bell*, 982 F.3d at 477 ("advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning").[1]

In sum, the allegations of the Complaint are sufficient to state a viable claim for deceptive practices under the Illinois Consumer Fraud and Deceptive Practices Act. Defendant's motion will be denied on this point.

### *Breach of Warranty*

Abbott asserts that Connor's state law warranty claims fail because there was no timely notice of the alleged breach of warranties and Connor has not alleged privity. With respect to the notice requirement, under Illinois law, "a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

---

[1] While Abbott notes that Connor did not rely on non-GMO statements on the label in purchasing the Product, given the Court's finding that the label could be misleading with respect to the breast milk comparison, it does not need to address the substance of the non-GMO argument at this time.

810 ILCS 5/2-607(3)(a). Even if a manufacturer is aware of problems with a particular product line, "the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 590 (Ill. 1996).

The notice requirement may be satisfied by the filing of a lawsuit under certain circumstances. But in Illinois, "[only] a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Id.* Thus, given that Connor does not allege any particular personal injury to her or an infant, the section 2-607 notice requirement was not fulfilled by her filing the Complaint.[2]

Under the Magnuson-Moss Warranty Act ("MMWA"), a written warranty is a fact or promise that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). The phrase, "Our Closest Formula to Breastmilk" makes no claim that the Product is free of defects or will meet a specified level of performance over a specified period of time. *See Rudy v. Fam. Dollar Stores, Inc.*, No. 21-cv-3575, 2022 WL 345081, at *8 (N.D. Ill. Feb. 4, 2022) (The phrase "Smoked Almonds" is a product description that does not warrant to consumers that the Product is defect-free or will perform at a specified level over a specific time.); *In re Sears, Roebuck & Co.*, No. MDL-1703, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (concluding that the phrase "Made in USA" was not a "written warranty" under the Magnuson-Moss Act because it does not indicate that the product will be defect-free or will perform at a specified level over a specific time). Therefore, Connor fails to state a viable breach of warranty claim under the MMWA.

---

[2] As the lack of notice is dispositive, the Court declines to address the parties' arguments regarding privity.

### *Fraud*

To state a claim for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). "*Scienter*, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Id.* at 841-42 (plaintiff's claim for common-law fraud was properly dismissed where plaintiff did not adequately plead scienter).

Connor fails to sufficiently allege that Abbot had the requisite scienter to defraud. In that regard, she alleges only that "[Abbott] mispresented and/or omitted the attributes of the qualities of the Product, that it was similar to breastmilk in its effect on immunity and brain and eye development" and "[Abbott's] fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" (Doc. 1, ¶¶ 82, 84) These conclusory allegations fall short of the requirements of Rule 9(b). Accordingly, Abbott's motion will be granted with respect to the fraud claim.

### *Negligent Misrepresentation*

Under the *Moorman* doctrine or "economic loss doctrine," claims alleging injury to solely economic interests must proceed in contract only. *See Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982). Citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (1994), Connor argues that her claim against Abbott, one of the oldest infant formula makers in the world with supposedly specialized knowledge, satisfies a recognized exception to the *Moorman* doctrine: where a defendant made negligent

misrepresentations while in the business of supplying information for the guidance of others in their business transactions. Illinois courts have applied this exception to a variety of commercial information providers, such as accountants, banks that provide credit information, product and real-estate inspectors, title insurers, and stockbrokers. *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 607 (2002) (collecting cases). However, it applies only to businesses dealing in commercial information, not tangible products such as infant formula. *Id.* Accordingly, Connor's negligent misrepresentation claim will be dismissed.

### *Unjust Enrichment*

In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Connor's unjust enrichment claim, which is based on the same conduct underlying her ICFA claim, is viable as pled. *See Cleary*, 656 F.3d at 517 (recognizing that where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim"). Abbott's motion to dismiss Connor's unjust enrichment claim will therefore be denied.

### *Injunction*

To survive a motion seeking dismissal under *FRCP* 12(b)(1), a plaintiff must meet three requirements to establish that she has standing to bring a lawsuit: (1) injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) redressability. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]o establish injury in fact when seeking prospective injunctive relief, a

plaintiff must allege a 'real and immediate' threat of future violations of their rights . . . . " *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 858 (Ill. App. Ct. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show the defendant's conduct will likely cause it to suffer damages in the future").

Abbott argues that Connor lacks standing to seek injunctive relief because she is now aware of the allegedly deceptive nature of the label. Connor asserts that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition" (Doc. 1, ¶ 46). But merely purchasing the Product does not trigger Connor's injury. Her alleged injury lies in purchasing the Product under the influence of a deceptive label. Obviously, she cannot be deceived again as alleged by the Product's comparison to breast milk. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, [plaintiff] is not likely to be harmed by the practices in the future"). Because Connor does not set forth any facts showing she faces a real and immediate threat of future harm, she does not have Article III standing to obtain an injunction against Defendant. *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074 (7th Cir. 2013) (stating that "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights"). Therefore, Connor lacks standing to pursue prospective injunctive relief; Abbot's motion will be granted on this point.

Finally, Abbott argues that Connor lacks standing to sue under the laws of states other than Illinois. This argument is premature. Any standing issues arising from Connor's attempt to represent the proposed multi-state class are class certification issues that will be addressed during

the class certification stage of this litigation. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999) (holding that because "class certification issues are . . . 'logically antecedent' to" the question of the putative class representative's standing, "the issue about Rule 23 certification should be treated first"); *Payton v. Cnty. of Kane,* 308 F.3d 673, 680 (7th Cir. 2002) ("We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing").

## Conclusion

For the foregoing reasons, Defendant Abbott Laboratories, Inc.'s motion to dismiss is **GRANTED** with respect to Plaintiff Sarah Connor's claims for breach of express warranty, implied warranty, and the Magnuson Moss Warranty Act; negligent misrepresentation; fraud; and her request for injunctive relief. Connor may proceed on her claims under the ICFA and for unjust enrichment.

**IT IS SO ORDERED.**

**DATED: March 29, 2023**

**STACI M. YANDLE**
**United States District Judge**